CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
JUL 23 2009
JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

RUTH SULLIVAN,
*Plaintiff,*

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,
*Defendant.*

CIVIL NO. 3:08CV00045

**MEMORANDUM OPINION**

JUDGE NORMAN K. MOON

This matter is before the Court upon the parties' cross motions for summary judgment (docket no. 14, 16), the Report and Recommendation of U.S. Magistrate Judge B. Waugh Crigler (docket no. 18), and Sullivan's objections thereto (docket no. 19). I referred this matter to the Magistrate Judge for proposed findings of fact and a recommended disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) & (C). On June 23, 2009, he filed his Report and Recommendation ("Report"), which recommended that this Court enter an order granting the Commissioner's motion for summary judgment, affirming the Commissioner's final decision, and dismissing this case from the docket. Sullivan timely filed objections to the Report, obligating the Court to undertake a *de novo* review of those portions of the Report to which objections were made. 28 U.S.C. § 636(b)(1)(C) (2006); *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir. 1982).

## I. BACKGROUND

On October 21, 2004, Plaintiff Ruth Sullivan protectively filed an application for a period of disability and disability insurance benefits, alleging a disability onset date of June 15, 2002. That date was later amended to March 11, 2003. The date on which Sullivan was last

insured for disability benefits was September 30, 2004.[1]

At the time of filing, Sullivan was forty-six years old and claimed she was disabled and thus no longer able to work because of knee and back problems, arthritis, and major depression. Prior to the alleged disability onset date, Sullivan worked full-time as a geriatric nurse assistant at a retirement home, where she was responsible for numerous aspects of patient care. Sullivan's application for disability benefits was denied initially and again on reconsideration. An Administrative Law Judge ("ALJ") ultimately found that although Sullivan suffered from several major impairments (degenerative joint disease of the knees and back, obesity, and depression), she retained the residual functional capacity ("RFC") to perform a range of simple, unskilled light work and thus was not "disabled" under the Social Security Act. Relying on the testimony of the vocational expert, the ALJ concluded that Sullivan was capable of performing work as a home health aide or companion. After the Appeals Council denied Sullivan's request for review, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration.

Sullivan timely filed the instant action on September 5, 2008. The parties filed cross motions for summary judgment, and the Magistrate Judge recommended that the Court enter an order affirming the Commissioner's final decision as supported by substantial evidence. Sullivan then timely filed objections to the Magistrate Judge's Report. At particular issue in the cross motions and in Sullivan's objections is the weight to be accorded to the opinion of Amy Alson, M.D. – Sullivan's treating psychiatrist at the Charlottesville Free Clinic ("CFC"). Sullivan did not start seeing Dr. Alson until April 12, 2005 – over six months after Sullivan's insured status

[1] At the hearing before the Administrative Law Judge, Sullivan was required to establish disability on or before September 30, 2004 in order to receive a period of disability and disability insurance benefits. The Social Security Act requires a wage-earner to have been paying into the Social Security system for at least half of the ten-year period prior to the onset of her alleged disability. At the point the claimant no longer meets that requirement, she cannot be found entitled to benefits regardless of how disabling her condition is.

expired. On November 16, 2006, at the request of Sullivan's counsel, Dr. Alson filled out a Mental RFC Questionnaire, in which she stated that Sullivan suffered from chronic post-traumatic stress disorder (PTSD), social phobia, major depressive disorder, and dysthymic disorder, and was incapable of meeting competitive standards in a wide variety of mental abilities and aptitudes considered necessary for performing unskilled work. Dr. Alson opined that the noted symptoms pre-dated her contact with Sullivan. Upon further request from Sullivan's attorney, Dr. Alson also wrote a letter, dated June 19, 2007, stating her belief that Sullivan suffered from symptoms of PTSD as far back as early adulthood and at least as far back as 2001:

> At the request of her attorney…I am writing to supplement my documentation of Ruth Sullivan's psychiatric condition. Chart notes at the Charlottesville Free Clinic refer to her psychiatric symptoms as early as June 21, 2001. She sought and received psychotherapy at the clinic in September 2002, and shortly thereafter began to reveal her history of an abusive childhood and difficult early adulthood to her therapist. While I did not evaluate her until 2005, it is likely that the symptoms and conditions for which I have treated Ms. Sullivan long predated my initial evaluation of her, and that she has suffered from symptoms of severe PTSD at least as far back as her request for therapy—and probably since her early adulthood.

In reaching his ultimate decision that Sullivan was not disabled, the ALJ reasoned that Dr. Alson's retrospective opinion was too speculative and thus entitled to "little weight." Even if Sullivan's PTSD dated as far back as Dr. Alson claimed, the ALJ explained, Sullivan had still been able to work for many of those years. The ALJ concluded that Sullivan's depression and PTSD only reached disabling proportions in 2005 – *after* Sullivan's date last insured.

In his Report, the Magistrate Judge determined that there was substantial evidence to support the ALJ's decision that Sullivan was not disabled prior to her date last insured, noting that Dr. Alson's opinion was inconsistent with treatment records from the relevant time period, the opinion of state agency psychologists, and non-medical evidence in the record. Sullivan

primarily objects to the Magistrate Judge's characterization of the evidence, claiming that: (1) Dr. Alson's opinion was not too speculative and should have been given more deference as a treating physician's opinion; and (2) the Magistrate Judge inappropriately characterized several pieces of medical and non-medical evidence in reaching his ultimate conclusion.

## II. STANDARD OF REVIEW

This Court must uphold the Commissioner's factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. § 405(g) (2000); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), and consists of "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F. 2d 640, 642 (4th Cir. 1966).

In determining whether the Commissioner's decision was supported by substantial evidence, the Court may not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." *Id.* (internal quotation marks omitted). Accordingly, a court may not undertake a *de novo* review of the Commissioner's decision, and the fact that the record may support a conclusion inconsistent with that of the Commissioner is immaterial. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## III. DISCUSSION

In her Objections, Sullivan primarily takes issue with the Magistrate Judge's evaluation of Dr. Alson's retrospective opinion (prompted by Sullivan's attorney) that it was "likely" that

Sullivan's PTSD symptoms long pre-dated Alson's initial evaluation of her and "probably" dated back to Sullivan's early adulthood. Dr. Alson began treating Sullivan seven months after the expiration of her insured status and offered her opinion concerning Sullivan's PTSD almost *three years* after the expiration of her insured status. While "a treating physician may properly offer a retrospective opinion on the past extent of an impairment," *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991), such an opinion may be given "significantly less weight" when it is not supported by objective medical evidence or is inconsistent with other substantial evidence. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). As noted by the Magistrate Judge, Dr. Alson's retrospective opinion is contradicted by medical records from the CFC prior to Sullivan's date last insured, the opinions of state agency psychologists who reviewed Sullivan's medical records, and other non-medical evidence. The medical records from the CFC during the relevant time period, for example, indicate that Sullivan's depression was relatively well-managed and that she was under no acute distress. She repeatedly denied any thoughts or consideration of suicide (R. 164-65, 139) and noted that her depressive symptoms were improving in two separate visits to the CFC. (R. 137, 141). She also failed to mention any symptoms of depression or anxiety during her two final visits to the CFC prior to her date last insured. (R. 133, 135). Furthermore, Sullivan saw a CFC social worker for counseling only five times during the relevant time period, and did not return to the CFC for counseling in the fifteen months between her last counseling session in June 2003 and her date last insured. (R. 149-56). Although the record documents Sullivan's multiple visits to doctors and the social worker at the CFC during the relevant period, it is devoid of any opinion by any of the treating professionals that Sullivan might be limited in her ability to work or that she was disabled due to her depressive symptoms.

The state agency psychologists' evaluations are consistent with the medical evidence in the record and also conflict with Dr. Alson's retrospective characterization of Sullivan's

symptoms. After reviewing the evidence of record, A. John Khalil, Ph.D. found that although Sullivan's mental impairment may have been severe on the date of his evaluation (February 3, 2005), her impairment was not of disabling proportions at the time she was last insured. (R. 202). Khalil noted that, during the relevant time period, Sullivan was capable of: following instructions, concentrating for extended periods of time, interacting appropriately in the workplace, maintaining regular attendance, engaging in socially appropriate behavior, and completing a normal workday without the exacerbation of psychological symptoms, among other things. *Id.* Mary Cronin, Ph.D. later affirmed Khalil's conclusions. (R. 201-03).

Finally, the non-medical evidence in the record also contradicts Dr. Alson's assessment. As noted by both the ALJ and the Magistrate Judge, it is undisputed that Sullivan worked full-time as a nurse assistant for the majority of years that Dr. Alson claimed Sullivan was suffering from PTSD. There is also evidence in the record that Sullivan even worked, or at least attempted to work, during the period she claims she was disabled and incapable of working. (R. 149, 165). Furthermore, Sullivan reported caring for her one and two year old grandchildren on a full-time basis during part of the relevant time period (she later cut back to part-time care at the behest of her physician). (R. 141).

In her Objections to the Magistrate Judge's Report and Recommendation, Sullivan disputes several of the "grounds" the Magistrate Judge relied on in reaching his ultimate conclusion.[2] The first objection claims that the Magistrate Judge and the ALJ misconstrue the nature of PTSD, which Sullivan claims to be an illness that begins with a past traumatic event that re-emerges in the patient's mind at a much later date. She claims that the emergence of her

---

[2] The first three objections by Sullivan actually relate to the Magistrate Judge's summarization of the ALJ's findings, not to any "grounds" or rationale the Magistrate Judge relied on in reaching his ultimate conclusion. In a social security case, after a magistrate judge submits his proposed findings and recommendations, the objecting party is to file written objections to the *magistrate judge's findings* (not to the magistrate judge's restatement of the ALJ's findings). *See* 28 U.S.C. § 636(b)(1)(C).

turmoil from PTSD "is demonstrated in the slowly developing conflicts which began to surface in the medical records in the Spring of 2003." Regardless of whether the ALJ and the Magistrate Judge misunderstand the nature of PTSD, the record clearly shows that Sullivan was able to work full-time and perform a variety of necessary daily activities for much of the time period that Dr. Alson claimed Sullivan suffered from PTSD. Sullivan provides no specific examples of the "slowly developing conflicts" in the medical records from the spring of 2003 and fails to account for why, if the PTSD was so severe, she quit seeing the CFC counselor for the fifteen-months prior to her date last insured.

Sullivan's second objection takes issue with the ALJ's finding that her PTSD reached disabling proportions in 2005 and claims that Dr. Alson's opinion should have been given more weight. As explained above, any finding by the ALJ that Sullivan was disabled in 2005 is irrelevant to the ultimate determination of whether she was disabled prior to her date last insured and thus entitled to disability insurance benefits. Also explained above, although Dr. Alson was Sullivan's treating physician, she treated Sullivan after her date last insured and offered the opinion nearly three years after the relevant time period ended. Her opinion also conflicted with medical records documented by Sullivan's other treating physicians, the opinions of state agency psychologists, and non-medical evidence of record.

In her third objection, Sullivan disputes the ALJ's reliance on the fact that she lost fifty pounds in 2005 as evidence of the onset of her disabling PTSD. Whether the weight loss occurred in 2005 as a result of Sullivan's mental impairment or because of her intentional efforts is actually irrelevant, as the weight loss occurred *after* her date last insured. Furthermore, the ALJ did not rely solely on the weight loss factor, but instead supported his ultimate determination with other substantial evidence that weighed heavily against Dr. Alson's retrospective assessment.

Sullivan's fourth objection takes issue with the Magistrate Judge's characterization of the treatment notes from the CFC prior to her date last insured. She argues that if her symptoms were "more controlled" and her spirits were "better," the CFC would not have had to continue to increase her dosages of Effexor. Although the record indicates that Sullivan's dosage was increased at least once during the relevant time period, the mere increase of a dosage of medication does not mean that Sullivan's depressive symptoms would prevent her from being able to work or perform other essential activities of daily living. Nor does the mere increase of a dosage of medication negate the treating physician's assessment that Sullivan's depression had been improving.

The fifth objection argues that the Magistrate Judge and the ALJ inappropriately relied on the opinion of the state agency psychologists to the exclusion of Dr. Alson. While it is true that "a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record," *Martin v. Sec'y of Dep't of Health, Education & Welfare*, 492 F.2d 905, 908 (4th Cir. 1974), the ALJ did not solely rely on the state agency psychologist's opinions, and those opinions were not contradicted by any of the evidence in the record, aside from Dr. Alson's retrospective opinion. As detailed above, the ALJ relied on substantial medical and non-medical evidence in the record in addition to the opinions of the state psychologists.

Sullivan's final objection disputes the Magistrate Judge's reliance on the fact that the record indicates that Sullivan worked or attempted to work in 2003. Although it is true that the Commisioner's own records do not reveal any work activity by Sullivan during that year and that the ALJ found that Sullivan had not engaged in substantial gainful activity since her alleged disability onset date, the record does show that Sullivan reported working during a March 11, 2003 doctor's visit (R. 165) and stated that she was being treated "mildly abusively by her boss"

in a June 10, 2003 appointment with the CFC social worker (R. 149). Sullivan herself even acknowledges in the Objections that the evidence in the record may be proof of her "transitory attempts at work here or there." While such evidence, by itself, is certainly not substantial enough to support a finding that Sullivan was not disabled during the relevant time period, it was not the sole or even one of the major factors relied on by the ALJ in reaching his ultimate decision.

## IV. CONCLUSION

Given the extent of medical and non-medical evidence in the record and the opinions of the state agency psychologists, I find that the ALJ's decision was supported by substantial evidence. Dr. Alson's retrospective opinion, offered nearly three years after the expiration of Sullivan's insured status at the request of Sullivan's attorney, is simply too speculative and contradicted by too much other evidence in the record to warrant a reversal of the ALJ's decision, as Sullivan requests. Accordingly, it is **ORDERED** that the Report and Recommendation of the U.S. Magistrate Judge shall be **ADOPTED** in its entirety. The Commissioner's decision is **AFFIRMED** and his motion for summary judgment is **GRANTED**. Sullivan's motion for summary judgment is **DENIED**. An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

ENTER: This 23rd day of July, 2009.

Norman K. Moon
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE